Alexander Chen [SBN 245798]
William R. Walz [SBN 136995]
Theodore Lee [SBN 281475]
Elliot Landreth [SBN 314884]
**INHOUSE CO. LAW FIRM**
7700 Irvine Center Dr., Suite 800
Irvine, California 92618
Telephone: (714) 932-6659
Facsimile: (714) 882-7770

Attorneys for Plaintiff,
KUEN HWA TRAFFIC INDUSTRIAL CO.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| KUEN HWA TRAFFIC INDUSTRIAL CO., a corporation organized under Taiwanese law,<br><br>    Plaintiff;<br><br>  vs.<br><br>DNA Motor, Inc., a California corporation,<br><br>    Defendant. | Case No.: 2:18-cv-05664-RGK-SK<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ISSUE, EVIDENTIARY, AND INSTRUCTIONAL SANCTIONS**<br><br>Date:     June 24, 2019<br>Time:     9:00 AM<br>Court.:    850<br><br>Trial date: August 6, 2019<br>Pretrial Conference: July 22, 2019 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on June 24, 2019, at 9:00 AM, or such other date and time the Court may select, before the Honorable R. Gary Klausner, in Courtroom 850 of the United States District Court for the Central District of California, Western Division, located at Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012, 8th Floor and pursuant to Rule 37 and this Court's inherent authority to control its process, plaintiff Kuen Hwa Traffic Industrial Co. ("KHTI" or "Plaintiff") will, and hereby does, move for issue, evidentiary, and instructional sanctions against defendant DNA Motor, Inc. ("DNA" or "Defendant").

Plaintiff makes this motion on the basis of Defendant's withholding and spoliation of evidence, perjury, and fabrication of evidence, which came to light during the deposition of DNA's person most knowledgeable, James Yeu ("Yeu").

In order to protect the integrity of the judicial process, Plaintiff specifically seeks an order:

(1) granting issue, evidentiary, and instructional sanctions against DNA Motor, Inc., including by instructing the jury that DNA and/or Yeu willfully falsified and submitted forged documents and offered false testimony in this case, and that DNA and/or Yeu willfully withheld or engaged in spoliation of evidence in this case and that the jury may consider these facts in drawing inferences at trial and assessing credibility;

(2) in addition, awarding Plaintiff the entirety of its attorney fees and costs attributable to DNA and/or Yeu's falsification of evidence and the falsified claims based thereon, including all fees and costs associated with conducting discovery into the falsified evidence and the fees and costs involved in bringing the present motion;

(3) granting such other relief that the Court may see fit to grant.

This motion is made in light of DNA's deliberate spoliation and withholding of evidence, submission of and reliance upon fabricated evidence in support of its falsified claims and defenses, and the other grounds set forth in the accompanying papers. This motion is based upon this notice of motion and motion, the attached memorandum of points and authorities, the Declaration of Elliot Landreth filed concurrently herewith, the pleadings and papers on file in this action, and such other and further evidence as the Court may consider at or before the hearing.

The required conference of counsel pursuant to Local Rule 7-3 and this Court's orders took place on May 13 and 15, 2019, when counsel for Plaintiff sent a detailed meet and confer letter and spoke with Defendant's counsel by phone. (Decl. Landreth, ¶¶ 2-3, Ex. 1.) Defendant could not articulate any response during the telephone call. (*Id.* at ¶ 3.) However, on May 22, 2019, the last day for filing of motions, Defendant sent a responsive meet and confer letter to counsel for Plaintiff. This letter, however, is entirely cursory and does little more than declare that Defendant disagrees with Plaintiff, offering neither substance nor support that speak to the issues raised in Plaintiff's original May 13 meet and confer. (*Id.* at ¶ 4, Ex. 2.)

DATED: May 22, 2019                                 Respectfully submitted,

**INHOUSE CO. LAW FIRM**

By: _____
      Alexander Chen, Esq.
      William R. Walz, Esq.
      Theodore Lee, Esq.
      Attorneys for Plaintiff,
      KUEN HWA TRAFFIC INDUSTRIAL CO.

# MEMORANDUM OF POINTS AND AUTHORITIES

## Introduction

Throughout this litigation, DNA has demonstrated an unwillingness to participate in good faith in discovery. DNA's written discovery responses were replete with meritless objections and devoid of much of the requested information. In an effort to resolve these issues, Plaintiff met and conferred in good faith. While Defendant agreed to provide some supplemental responses and additional document production at the end of February 2019, three months later, no such responses or production have been forthcoming.

Then, during the deposition of DNA's PMK James Yeu on May 8, 2019, Yeu stated that Defendant's responses to written discovery were true and correct, and declined to make any changes when given the opportunity to do so. However, his testimony materially differed from many of the written response, as detailed below. Yeu also admitted that Defendant had withheld discovery on information relating to DNA's Gen2 of the accused products, excusing his withholding of responsive information as unimportant.

Finally, while Yeu testified that the produced sales report regarding Gen1 produced by Defendant is true and accurate, Plaintiff has otherwise received information via subpoena to third parties showing that the report significantly understates the true numbers.

DNA's misconduct in this litigation goes directly to the core issues in this case, and therefore issue, evidentiary, and instructional sanctions are appropriate.

## I. BACKGROUND

### A. Relevant Facts

On April 20, 2016, the United States Patent and Trademark office duly and legally issued United States Design Patent No. D791,987, entitled "Vehicle headlight" ("the '987 Patent"). Plaintiff KHTI is the assignee and owner of the entire right, title, and interest in and to the '987 Patent.

The '987 Patent has one single claim directed to the ornamental design for an exterior surface configuration of a vehicular headlight. Defendant DNA copied the design of the 2012-2015 Toyota Tacoma projector style headlight featuring a LED halo ring ("Accused Products") from the headlight design of the '987 Patent. A side-by-side comparison of the '987 Patented design and an exemplary

specimen of Defendant DNA's projector style headlight is shown below, the photograph of the exemplary DNA's headlight being taken from its Amazon product listing:

| D791987 | DNA's Accused Product |
|---|---|
|  | |

As shown in the pictures, the headlight design of the 2012-2015 Toyota Tacoma projector style headlight featuring a LED halo ring is the same or substantially the same as the headlight design of the '987 Patent. The headlight designs are so similar as to be nearly identical such that an ordinary observer, giving such attention as a purchaser usually gives, would be so deceived by the substantial similarity between the designs so as to be induced to purchase DNA's products believing them to be substantially the same as the headlight design protected by the '987 Patent.

Plaintiff has not granted a license or any other authorization to Defendant to make use, offer for sale, sell, or import headlights that embody the headlight design patented in the '987 Patent, which is proprietary to Plaintiff.

Without authority, Defendant has infringed and continues to infringe the '987 Patent by, *inter alia*, making, using, offering to sell, or selling in the United States, including in the State of California and within this District, products infringing the ornamental design covered by the '987 Patent in violation of 35 U.S.C. § 271, including but not limited to Defendant's 2012-2015 Toyota Tacoma projector style headlight featuring a LED halo ring.

B.    **DNA's Discovery Misconduct**

1.    **Written Discovery**

On December 11, 2019, Plaintiff served upon Defendant interrogatories, requests for production of documents, and requests for admission. (Decl. Landreth, ¶ 5.) Defendant provided verified responses on January 15, 2019. (*Id.* at ¶ 6, Exs. 3, 4, 5.) On February 14, 2019, Plaintiff sent Defendant a meet and confer letter detailing the deficiencies in Defendant's responses. (*Id.* at ¶ 7, Ex. 6.) On February 27, 2019, Defendant responded, agreeing to supplement some of its responses and produce additional documents. (*Id.* at ¶ 8, Ex. 7.) On February 28, 2019, Plaintiff sent an additional meet and confer letter, further addressing items Defendant had not agreed to supplement. (*Id.* at ¶ 9, Ex. 8.) On March 6, 2019, Defendant responded, reiterating its agreement to provide supplemental responses and documents but still not providing a date for compliance. (*Id.* at ¶ 10, Ex. 9.) Plaintiff replied on March 15, 2019, repeating its requests, and Defendant responded for the final time on March 19, 2019. (*Id.* at ¶ 11, Exs. 10, 11.) To date, no supplemental responses or production of documents have been received by Plaintiff, either pursuant to the meet and confer efforts or Rule 26. (*Id.* at ¶ 12.)

2.    **Spoliation of Evidence**

During his deposition, Yeu clearly admitted to spoliation of evidence. After testifying that he communicated with the manufacturer of the accused products after receiving a cease and desist letter from Plaintiff via texts to his smart phone, Plaintiff's counsel requested access to the phone. (*Id.* at ¶ 13, Ex. 12 [Dep. Yeu] 61:5-63:22.) In response, Yeu stated:

> A    So here's the thing. I can show you my phone, and I delete everything every day, because I don't like junk slowing down my phone.
>
> …
>
> A    I clear my phone every night. That's my routine.

(*Id.* at ¶ 13, Ex. 12, 63:23-25, 64:3-4.)

Despite Yeu's claims that his purpose in deleting the messages between himself and the manufacturer of the Accused Products was to speed up his phone, it is a bedrock principle of law that "*ignorantia juris non excusat*". Being that Yeu understood a lawsuit had been initiated against DNA,

both DNA and Yeu were each obligated to preserve evidence; however, Yeu has persisted in deleting all communications with his manufacturer since at least the beginning of this lawsuit through the present.

### 3. Withheld Evidence

Notwithstanding this testimony, perhaps in an effort to backpedal, Yeu went on to explain that while he had no idea what phone application he used to obtain the records supposedly justifying his infringement from his Chinese manufacturer, he **does** keep a personal folder on his computer which contained records relevant to this case, including a copy of a Chinese language pdf or PowerPoint from the manufacturer purportedly proving that the Accused Products did not infringe the '987 Patent. Yet Defendant has never specifically identified or produced such document. This also contradicts DNA's repeated assurances to Plaintiff that DNA does not keep electronic records. (*Id.* at ¶ 13, Ex. 12, 116:2-19.) In its Request for Production numbers 2 and 8, Plaintiff requested communications and correspondence, to which nothing was produced, despite Yeu's testimony that he uses both messaging and email, and has made reference to the existence of documents transmitted this way which would be responsive to the Plaintiff's document requests. (*Id.* at ¶ 6, Ex. 4.) Yeu also admits to having an e-mail account, and that relevant files may have been e-mailed, but no email correspondence has ever been identified or produced by Defendant. (*Id.* at ¶ 13, Ex. 12, 117:15-21.)

Yeu also revealed that DNA uses QuickBooks for its record keeping, and that Yeu has access to these records. (*Id.* at ¶ 13, Ex. 12, 68:8-20; 72:5.) Yeu also testified that Quickbooks can quickly provide all sorts of information sought by Plaintiff but this was also not produced. (*Id.* at ¶ 13, Ex. 12, 72:15-73:3.) However, questions posed originally in Plaintiff's written discovery to which the Quickbooks data would have been responsive were either ignored or the responses thereto were woefully incomplete. In Request for Production number 1, Plaintiff requested price lists, however, DNA only produced sales records. (*Id.* at ¶¶ 6, 14(a), Ex. 4.) In Request for Production numbers 28 and 34, Plaintiff requested information about costs and inventory, which DNA withheld. (*Id.* at ¶¶ 6, 14(b), Ex. 4.) Due to Defendant's refusal to respond in good faith to Plaintiff's written discovery, Plaintiff did not receive information regarding cost of goods, inventory, shipping costs, and the like until Yeu's deposition on the final day of discovery, with no documentation ever produced to back up Yeu's oral claims. (*Id.* at ¶¶ 13,

15, Ex. 12, 74:19-22; 75:3-4; 77:16-20; 93:21-25; 94:2, 6-8, 14-23; 95:4-25; 96:2-6, 8-15; 97:8-16; 125:19-126:1-7.)

### 4. Defendant Fabricated Evidence.

Similarly, Yeu also admitted his personal knowledge of Gen 2 headlights, the history of their development, and that these headlights are effectively Gen 1 headlights albeit with the addition of a LED bar. Per Yeu these Gen 2 lights are identical to Gen 1, but with "…an additional light. … [T]here was room to add the light. It wasn't hard to do it." (*Id.* at ¶ 13, Ex. 12, 86:3-5.) This accords with the concept that if one part is to be deemed generation 1, and then that part is developed into generation 2, logically these parts are likely inherently related and relevant for the purposes of discovery. However, DNA withheld all documents and information regarding Gen2 products in response to Plaintiff's discovery, which specifically requested information on products that are sufficiently similar. (*Id.* at ¶ 14(c), Ex. 4 [Defining "ACCUSED PRODUCTS" as "YOUR item model number HL-3D-TTACO12-BK-CL1; YOUR item model number HL-3D- TTACO12-SM-AM; and all other presently unidentified automotive headlights (including products in development) CREATED by YOU that are SUFFICIENTLY SIMILAR to the 'PATENT(S) IN SUIT'."])

Finally, upon review of Yeu's statements as to sales, he testified that he produced his QuickBooks sales reports, and that those reports include all relevant information. (*Id.* at ¶ 13, Ex. 12, 71:19-25; 72:5-73:3.) In response to being asked about marketplaces, Yeu readily identified Amazon, eBay, Walmart, Newegg, Rakuten, and Wish, and affirms that these marketplaces are known to him. (*Id.* at ¶ 13, Ex. 12, 38:2, 4-9; 39:21-24.) In Request for Production number 35, Plaintiff sought records from all trade channels, however, Defendant only produced records relating to eBay and Amazon. (*Id.* at ¶ 6, 14(d), Ex. 4.) When the questioning moved to review of the documents produced by DNA, Yeu identified several exhibits as QuickBooks reports that he claims he generated and affirmed that these reports contain all wholesale and E-commerce marketplace customers. (*Id.* at ¶ 13, Ex. 12, 127:12-25.)

Yeu testified that Amazon and eBay account for "ten to one" in terms of sales, with these other online marketplaces account for, by his estimate, 9% of DNA's total E-commerce business, with the E-commerce portion of DNA's business increasing. (*Id.* at ¶ 13, Ex. 12, 41:16-22; 49:5-14.) However 9% is not statistically insignificant in terms of sales and, as such, damages, such that Plaintiff was entitled to

production of records of sales that would speak to these other online marketplaces: Walmart, Rakuten, Newegg, and Wish, along with any other online marketplace through which DNA sells or has sold the Accused Products.

As initially indicated, and as provided at the time of deposition, Plaintiff is in possession of sales records received directly from Walmart, Rakuten, and Newegg, and has identified multiple sales that are not included in the documents produced. Further, the sales identified by these third-party documents do not match to any entries in DNA's production based on date and price, such that it is reasonably certain that DNA's production of documents understates the true volume of sales of the accused products.

### 5. Failure to Supplement

Finally, the records produced only reflect sales reports from January 2018 through December of 2018, but the Gen1 and Gen2 of the accused products continue to be advertised and sold in all of these marketplaces. DNA has failed to supplement its responses to update these figures. (*Id.* at ¶ 13, Ex. 12, 131:8-12.)

There exists the admission of spoliation, withholding of evidence, failure to supplement evidence, potentially forged evidence, perjury, and the like, each individually deemed grave litigation misconduct. Cumulatively, this amount of offense potentially rises to the level of criminal conduct and warrants issue, evidentiary, and instructional sanctions.

## II. ARGUMENT

### A. Legal Standard

Federal courts have inherent authority to impose sanctions when parties have "engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); see also *Chambers v. NASCO, Inc.*, 501 U.S. 32, 58 (1991) (grant of full fees sanction appropriate to remedy "relentless, repeated fraudulent and brazenly unethical efforts" of party); *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1993) (full terminating sanctions warranted where "a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.").

Federal Rule of Civil Procedure 37(e) provides further authority for sanctions as follows: "[I]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." In addition, Rule 37(e) permits recovery of (1) reasonable expenses, including attorney's fees, caused by the failure, (2) instructions to the jury of the party's failure, or (3) directing that certain facts be taken as established for purposes of the action. (FRCP 37(e), (b)(2)(A)(i).)

Instances in which the courts have granted sanctions such as those requested herein include the following:

- In *Forsberg v. Pefanis*, 2009 WL 4798124 (N.D. Ga. Dec. 8, 2009), the Court held that a party's submission of a falsified declaration in discovery required terminating sanctions even though the declaration was never submitted in evidence. *Id.* at *3-4;

- In *Sun World, Inc. v. Lizarazu Olivarria*, 144 F.R.D. 384 (E.D. Cal. 1992), the court held that a party's forgery of a document attached as an exhibit to a declaration, and noncompliance with discovery into the circumstances of that forgery, mandated terminating sanctions. Id. at 388; and;

- In *Uribe v. McKesson*, 2011 WL 3925077 (E.D. Cal. Sep. 7, 2011), the court ruled that the submission of a single false declaration a declarant who "never saw or read the declaration prior to [the party] forging his name to the document" required full terminating sanctions, as allowing the party "to continue this action would not deter repetition of such conduct or comparable conduct. Such a course would simply place [the party] back in the same position he was in, without the false declaration." *Id.* at *5

### B. *Plaintiff is Entitled to Issue, Evidentiary, and Instructional Sanctions Against Defendant*

DNA has withheld material information despite extensive meet and confer efforts, claiming that the requested information and documents simply did not exist. However, when Yeu was deposed, he admitted to the existence of many withheld responsive documents as well as knowledge that DNA failed to provide in response to on point discovery requests. Issue, evidentiary, and instructional sanctions are the minimum relief that is required for this pattern of litigation misconduct.

#### 1. **Issue and Evidentiary Sanctions**

DNA has acted in clear bad faith with regard to its fabrications, destruction and withholding of

evidence, and false discovery responses. Its actions have been directed toward minimizing their sales data in order to deceptively reduce a potential damages award, and preventing Plaintiff from accessing any information about its Accused Products in order to fully analyze the claimed infringement. Taking this into consideration, the Court should order it established that the Accused Products infringe upon the '987 Patent, and preclude DNA from arguing or introducing any evidence, before a jury or otherwise, regarding these or any self-generated product information, including inventory or sales reports.

These remedies are directly tied to the willful misconduct at issue—DNA's fabrication and spoliation of evidence—and hence are more than justified. See *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (affirming evidentiary sanctions because party's misconduct "rendered unreliable virtually all of the evidence that a finder of fact could potentially consider"). Although full terminating sanctions are more appropriate when an issue-preclusive sanction would "effectively dispose[] of the merits anyway," see *Young v. Office of U.S. Senate Sergeant-at-Arms*, 217 F.R.D. 61, 73 (D.D.C. 2003), at a minimum these issue and evidentiary sanctions should be imposed.

### 2. Adverse Inference Jury Instruction

In addition, the jury should be instructed that DNA willfully fabricated, withheld, and spoliated evidence and that the jury may consider and draw adverse inferences from these facts when determining liability and assessing credibility. See *Apple Inc. v. Samsung Electronics Co., Ltd.*, 881 F. Supp. 2d 1132, 1151 (N.D. Cal. 2012) (granting adverse inference jury instruction for failure to preserve evidence).

### III. PLAINTIFF IS ENTITLED TO ITS FEES AND COSTS

Monetary sanctions in addition to other sanctions are also appropriate. (FRCP 37(b)(2)(A)(i).) "[I]f a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party." *Chambers*, 501 U.S. at 45-46; see also 28 U.S.C. § 1927 (liability for fees and costs imposed for "multiply[ing] the proceedings in any case unreasonably and vexatiously").

DNA's continued misconduct unquestionably warrants an award of Plaintiff's fees required to investigate DNA's false discovery responses and to bring evidence of its misconduct to the Court's attention through this motion. *Chambers*, 501 U.S. at 50 (court may "resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct"); *Greenburg*, 246 Fed. App'x at 500

(upholding attorneys' fees sanction, in addition to dismissal of action, for attaching forged documents to a court filing); *Scholastic, Inc. v. Stouffer*, 221 F. Supp. 2d 425, 444 (S.D.N.Y. 2002) (summary judgment and fee award granted as the "calculated generation of fraudulent documents and testimony undoubtedly imposed burdens on plaintiffs by increasing the legal fees and expenses incurred by plaintiffs in the investigation and defense of her counterclaims"); *Sun World*, 144 F.R.D. at 391 (in addition to default judgment, assessing attorneys' fees sanction for all "costs and attorney's fees incurred by [the party] resulting from and relating to [the] fraudulent document").

Here, Plaintiff should be awarded the entirety of its attorneys' fees and costs attributable to DNA's false discovery responses and the bringing of this motion. So that the Court may assess the proper amount of this award, plaintiff should be granted leave to make an application to this Court within thirty days of the disposition of this motion detailing the amount of such fees and costs to be awarded, including all fees and costs associated with conducting discovery into the falsified evidence, together with the fees and costs involved in bringing the present motion. See *Scholastic*, 221 F. Supp. 2d at 445 ("plaintiffs are directed to make an application, within 30 days from the entry of this order, detailing the amount of such fees and costs").

## Conclusion

For all of the foregoing reasons, Plaintiff hereby respectfully requests that its motion be granted in its entirety.

DATED: May 22, 2019  Respectfully submitted,

**INHOUSE CO. LAW FIRM**

By: _____
Alexander Chen, Esq.
William R. Walz, Esq.
Theodore Lee, Esq.
Attorneys for Plaintiff,
KUEN HWA TRAFFIC INDUSTRIAL CO.